DECISION AND JOURNAL ENTRY
Appellant Erin Morris appeals from the judgment of the Wayne County Court of Common Pleas, Juvenile Division, which modified a prior shared parenting plan, designated Appellee Michael Miller the residential parent for their daughter Elayna, and awarded Michael discovery sanctions. This Court affirms.
 I.
Erin Morris and Michael Miller are the parents of Elayna Miller, born November 29, 1994. The couple never married; Erin was eighteen and Michael was twenty-seven when Elayna was born. Erin lived with Michael for a month after Elayna's birth, but Michael asked Erin to leave. Erin took Elayna and moved in with her mother. Erin did not receive child support from Michael, and had to rely on welfare benefits for nearly a year after Elayna's birth. The Wayne County Child Support Enforcement Agency filed a motion for child support in juvenile court on behalf of Elayna and Erin in September 1995. Michael was ordered to pay child support and to provide health insurance for the child. Subsequently, the parents entered into a shared parenting plan, which was approved by the court on December 27, 1995.
The shared parenting plan provided that Elayna would live with Erin, and that Michael would have visitation with Elayna every weekend. Notwithstanding ongoing conflicts between the parents, this plan worked out reasonably well for two years. However, Erin was not able to achieve financial stability. She had several short-term jobs, none of which included hospitalization coverage. In November 1997, Erin married David Evans, who at the time was also unemployed. At about this time, Michael told Erin that he had quit his job. Erin realized that Elayna would be without medical insurance. Erin then decided to join the Army, with the goal of achieving financial security and ultimately completing her college degree with financial assistance provided by the military.
Erin was advised that she would be unable to take Elayna with her for the required six months of basic training. Erin asked Michael if he would take care of Elayna for six months, until Erin was given a permanent assignment. According to Michael, he told Erin he would be happy to take Elayna, but that he wanted the change of residential parent to be permanent. Erin would not agree to this arrangement. However, with this ultimate issue unresolved, Erin relinquished Elayna's care to Michael on January 13, 1998 and she entered basic training. Approximately one month later, Michael filed a motion to reallocate parental rights and responsibilities.
Erin's military training took her to Missouri and Alabama, and she was finally stationed in Fort Knox, Kentucky. Discovery began in the custody case, but issues arose over Erin's failure to answer interrogatories. Almost three months after discovery was requested from Erin, her counsel served Michael's attorney with the requested discovery materials. Simultaneously, Michael sought attorney fees as sanction for Erin's failure to comply with the discovery request in a timely manner.
A hearing was held on Michael's motion for reallocation of parental rights and responsibilities and on his motion for sanctions. The parents and various family members testified as to the fitness of each parent and the best interest of Elayna. It was clear that there had been ongoing conflict between the parents over the issue of visitation. Since her move to Fort Knox, Erin had made frequent weekend visits to the area, but Michael often denied or limited her opportunity to visit with Elayna. Michael and his family testified that Elayna had a good relationship with her father and his extended family. They also testified that if Elayna was returned to Erin's care, it would be difficult for them to continue their close relationship with Elayna because of the burden of traveling to Kentucky for visits. There was also testimony from both sides that Elayna became upset periodically because she could not remain with her mother. She also experienced difficulty in making the transition between parents. A guardian ad litem who had been appointed by the court filed his report prior to the hearing. In his report he observed that either parent would be a good residential parent for Elayna, but he recommended that it would be in Elayna's best interest to return to her mother's custody.
The trial court entered its judgment on November 30, 1998, reallocating parental rights and responsibilities such that Michael was named the residential parent. The court found that Erin's move constituted a change in circumstances, that Elayna had become integrated into Michael's home with the consent of both parents, and that it was in Elayna's best interest for Michael to be named residential parent, pursuant to R.C. 3109.04(E)(1)(a) (ii). The trial court also found that sanctions were appropriate for Erin's delay in discovery compliance, and the court awarded Michael $200 in attorney fees. Erin filed the instant appeal. She assigns as error that (1) the trial court abused its discretion in reallocating parental rights and responsibilities and (2) the trial court abused its discretion in awarding attorney fees.
 II. FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION IN APPLYING [R.C. 3109.04], AND RE-ALLOCATING THE [PARENTS'] RIGHTS TO APPELLEE.
In Ohio, the allocation of parental rights and responsibilities by the court is governed by statute. R.C. 3109.04(E)(1) governs a modification of an earlier parental rights decree. The statute provides, in pertinent part, that:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 The residential parent agrees to the change in the residential parent * * *.
 The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(E)(1)(a). When considering the best interest of the child in allocating parental rights and responsibilities, the statute directs the court to consider "all relevant factors" including
The wishes of the child's parents regarding his care;
 If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;
 The child's interaction and interrelationship with his parents, siblings, and any other persons who may significantly affect the child's best interest;
The child's adjustment to his home, school, and community;
 The mental and physical health of all persons involved in the situation;
 The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 Whether either parent has failed to make all child support payments * * *;
 Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 Whether the residential parent or one of the parents subject to a shared parenting decree has continuously or willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 Whether either parent has established a residence, or is planning to establish a residence outside this state.
R.C. 3109.04(F)(1).
Great deference will be paid to the trial court's allocation of parental rights and responsibilities, based on the broad discretion entrusted to the trial court in these matters. Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618. Thus, the standard for review is abuse of discretion. Id. An abuse of discretion is more than mere error. The trial court's decision must be "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. As long as there is a "substantial amount of credible and competent evidence" to support an allocation of parental rights and responsibilities, the decision of the trial court will not be upset. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. See also, Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 412-413.
The trial court found that Erin's relocation constituted a change in circumstances of the residential parent, as defined in R.C. 3109.04(E)(1)(a). Once a court finds that there has been a change in circumstances of the residential parent, the court may modify the existing decree only if it finds that the modification is in the best interest of the child and that one of the three enumerated circumstances exists in the family. The trial court found that Erin did not intend to abandon Elayna, but that she willingly relinquished the child to Michael's care in order to undertake basic training in the military. The consequence of that voluntary relinquishment was that Elayna had become integrated into Michael's home.
Looking at the factors listed in R.C. 3109.04(F)(1), the trial court found that five factors were relevant to the instant case. The court considered Elayna's relationship with extended family here, her adjustment to the home and community, the stability of each parent, the parent most likely to facilitate visitation rights, and the fact that Erin had established a home outside Ohio. The court found that the extensive number of involved family members living in this area weighed in favor of naming Michael the residential parent. The court also looked at Erin's ability to visit more frequently, since she could stay with family during her visits from Kentucky. Michael would likely have to pay hotel costs when visiting Elayna in Kentucky. The court noted that there had been problems with visitation since Erin moved out of state. However, the court attributed these problems to the inclination of both parents to bicker and find fault with one another, rather than focus on Elayna's best interest. The court found that either parent would be a good residential parent for Elayna. However, given the fact that Elayna had been integrated into her father's house and the family ties she has in Ohio, it was reasonable for the court to find that it was in Elayna's best interest to name her father the residential parent.
The trial court made the statutorily required findings necessary to modify the prior decree, based on competent credible evidence before it. We cannot say that the trial court abused its discretion when it decided that it was in Elayna's best interest to modify the prior shared parenting decree and name Michael the residential parent. Thus, we overrule Erin's first assignment of error.
 III. SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES, AS A SANCTION, WHEN DISCOVERY REQUESTS HAD BEEN COMPLIED [WITH] BY THE APPELLANT PRIOR TO THE REQUEST FOR SANCTIONS, AND IT WAS PROPER TO PRESENT A MOTION [IN LIMINE].
The trial court imposed attorney fees as a sanction for Erin's failure to comply with discovery requests and for Erin's motion in limine requesting sanctions against Michael for failing to apprise her of witnesses he intended to call at the hearing. The court found that answers to interrogatories were filed late. The court also found that there was no basis for the motion in limine because Erin had filed no discovery request for a witness list.
Erin concedes that she did not submit the required interrogatories on time. However, she argues that because the interrogatories were submitted before the motion to compel discovery was filed, Michael was not prejudiced by the late response. We do not agree.
An initial request for documents and a set of interrogatories were filed on July 6, 1998. Michael's counsel made efforts to resolve the issue of discovery informally. The requisite twenty-eight days for responding to interrogatories passed, without a response from Erin. When Erin finally responded to the interrogatories on September 21, Michael had already mailed to the court his motion to compel, filed pursuant to Civ.R. 37. The motion was journalized on September 22 and the notice of service of answers to interrogatories was journalized on September 24. Michael's counsel submitted evidence that he was required to expend time filing the motion to compel.
Civ.R. 37(A) permits a party to file a motion to compel discovery. Once the motion to compel is granted, the court may hold a hearing on the issue of whether sanctions are warranted. Civ.R. 37(A)(4).
"A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion." Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, syllabus. An abuse of discretion is more mere an error. It must involve "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard in the context of discovery sanctions, an appellate court may not substitute its judgment for that of the trial court. Russo v. Goodyear Tire Rubber Co. (1987), 36 Ohio App.3d 175,179.
We cannot say that the trial court abused its discretion when it imposed sanctions for failure to comply with discovery. There was competent, credible evidence that Erin failed to comply in a timely manner with the required discovery. There is also evidence that Erin had the time and opportunity to correct the problems. Id. Nor are the sanctions severe relative to the severity of the violations. Id. at 178.
The same may be said for the trial court's imposition of sanctions for the unwarranted motion in limine. The evidence before the trial court indicated that Erin did not file a request for discovery. Despite the fact that Erin's request for a witness list was informal, Michael complied with the request, updating his list when it became apparent that other witnesses would testify. There is sufficient evidence to support the trial court's decision to impose sanctions for the unwarranted motion in limine. We overrule Erin's second assignment of error.
Having overruled Erin's assignment of error, we affirm the judgment of the trial court.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT WHITMORE, J.
BATCHELDER, J. CONCUR